UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

KUSHAWN S. MILES,

                    Plaintiff,                    Case No. 2:23-cv-31

v.                                                Honorable Jane M. Beckering

STATE OF MICHIGAN et al.,

                    Defendants.
_____/

## OPINION

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the
Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is
required to dismiss any prisoner action brought under federal law if the complaint is frivolous,
malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a
defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The
Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520
(1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly
incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, as detailed
below, the Court will partially dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

    Plaintiff is presently incarcerated with the MDOC at the Lakeland Correctional Facility
(LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at

the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan, and the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan.

Plaintiff sues the following Defendants in their official capacities only: the MDOC and the MDOC Insurance Company Unknown Party #1. Plaintiff sues the following Defendants in both their individual and official capacities: the State of Michigan, MDOC Director Heidi Washington, the Bureau of Health Care Services (BHCS), MDOC Transfer Coordinator Laura Heintriz, Prisoner Counselor Adam Pancheri, Warden Sarah Schroeder, and Deputy Warden Dean Potila.

On May 5, 1994, Plaintiff came into the MDOC to serve a life sentence. At this point, there were no dog programs at MDOC facilities, and Plaintiff did not have any experience being housed with dogs. In 2017, when Plaintiff was transferred to the Muskegon Correctional Facility (MCF), he discovered that he would be housed at a facility that also housed dogs, and he brought it to the attention of non-party nurses and non-party Medical Provider Dr. Decker.

Once at MCF, Plaintiff began having severe allergic reactions to the dogs, including asthma attacks. This required Plaintiff to receive breathing treatments daily and to be given steroids and restricted allergy medications. On January 19, 2017, Plaintiff had his chronic care visit with his medical provider, who documented Plaintiff's history of allergies. Plaintiff's asthma was classified as "severe persistent." (ECF No. 1, PageID.7.) It was also noted that Plaintiff's asthma was exercise induced, seasonal, and systemic, with a requirement for continuous steroid use, and that aggravating factors included animals. (*Id.*)

On February 7, 2017, Plaintiff was transferred on an emergency basis to the Brooks Correctional Facility (LRF), to help alleviate his allergies and severe asthma attacks. The transfer had to be approved by Defendant Heintriz. In October of 2017, Plaintiff was transferred to URF and was placed on the West Side of the facility. The leader dog program at URF was contained to

two units, and Plaintiff was not housed in either of these units. However, Plaintiff had numerous severe allergic reactions and asthma attacks. Plaintiff asserts that yard officers brought dogs into his housing unit, walked around with the dogs, and shook Plaintiff down and searched his property, which exposed Plaintiff to allergens. Plaintiff filed a grievance, which prompted Plaintiff to be moved to the East Side because dogs should not be on that side of the prison.

When Plaintiff was sent to the East Side, "he was ridiculed, criticized, and harassed" by Defendant Pancheri and non-party Prisoner Counselor Salamon about his dog allergies. (*Id.*) Plaintiff states that Defendant Pancheri subjected him to inhumane living conditions and deliberately attempted to impede Plaintiff's access to the courts by interfering with his outgoing mail. While Plaintiff was being housed on the East Side, he filed multiple grievances regarding continued health issues, placing staff and the Director's Office on notice of his serious medical needs. Plaintiff also filed several written and verbal complaints against Defendant Pancheri for harassment and retaliation, and for "making Plaintiff a target" by telling other housing unit officers that Plaintiff was helping other prisoners file complaints. (*Id.*, PageID.8.) In addition, Plaintiff filed a complaint and grievance on Defendant Pancheri for allowing staff to destroy Plaintiff's personal property when Plaintiff was placed in administrative segregation.

Plaintiff asserts that in February of 2020, Defendant Pancheri was angry about Plaintiff being elected as the Unit Block Representative for Marquette Unit and told Plaintiff to get his affairs in order because he was going to be transferred to the Alger Correctional Facility (LMF) so that someone else would have to deal with his grievances and complaints. Defendant Pancheri told Plaintiff that he was tired of Plaintiff filing complaints, grievances, and lawsuits against staff, as well as helping other prisoners with their grievances and lawsuits. Plaintiff asked how this could happen when LMF only had one level II unit, which was used for the leader dog program.

Defendant Pancheri stated that he did not care, and that if the Lansing Transfer Coordinator approved the transfer, Plaintiff would be someone else's problem.

On February 9, 2020, Plaintiff was told to pack up his property. The next day, Plaintiff was transferred to a level II housing unit at LMF. Plaintiff states that when he arrived at LMF, he informed the SCC that he had a dog allergy. Plaintiff was subsequently assigned to the only level II housing unit at LMF that had dogs, forcing Plaintiff to have daily contact with dog allergens. On February 10 and 11, 2020, Plaintiff had severe allergic reactions as a result of exposure to dog dander and suffered from severe asthma attacks. Health Care staff had Plaintiff quarantined and spread a rumor that Plaintiff had arrived at LMF with the flu. On February 11, 2020, Plaintiff was given a box of Tamiflu and was swabbed to check for the flu virus despite the fact that Plaintiff told staff he was suffering from an allergic reaction.

On February 12, 2020, Plaintiff's flu test came back negative and he was removed from quarantine. Plaintiff filed a grievance regarding his exposure to animal dander. Plaintiff appealed the denial of his grievance to steps II and III, alerting Defendants Schroeder and Washington of his situation. Plaintiff continued to experience allergic reactions to the dogs, and he repeatedly brought these to the attention of unit officers, counselors, the Warden, the Deputy Warden, and Health Care officials. Defendant Schroeder failed to take any action to alleviate the threat to Plaintiff's health.

Plaintiff's restricted allergy medication was increased from 25 mg to 50 mg, and his continuous use of steroids, breathing treatments, and skin creams brought only temporary relief. Plaintiff states the problem was exacerbated by the fact that his clothes and bedding were being washed with clothing and items that were contaminated with dog dander. Plaintiff wrote to his mother on February 19, 2020, prompting her to contact the Office of Legislative Ombudsman,

Defendant Washington, Attorney General Allan J. Soros, Warden Catherine Baughman, State Representative Sara Cambensy, U.S. Congresswoman Brenda Lawrence, State Representative Rose Mary Robinson, and Natalie Holbrook of the American Friends Service Committee. (ECF No. 1, PageID.9; ECF No. 1-9.)

On June 29, 2020, Plaintiff received a JPay letter from Susie Greenbauer of Humanity for Prisoners, responding to Plaintiff's complaint regarding his allergies to dogs and his request to be moved. This letter stated that they had received a message from the BHCS acknowledging Plaintiff's serious medical needs and ongoing respiratory and allergy concerns. On July 2, 2020, Plaintiff filed another grievance on Defendants Schroeder, Health Care Resident Unit Managers, and prisoner counselors. On July 4, 2020, Plaintiff filed a complaint with Health Care, and on July 7, 2020, Plaintiff filed a complaint with Humanity for Prisoners.

On September 1, 2020, Plaintiff filed an ADA reasonable accommodation request, seeking to be placed in a level II housing unit without dogs and to limit his contact with items contaminated with dog dander. On September 2, 2020, Plaintiff's accommodation request was denied by Defendant MDOC and Defendant Potila because "health care did not have [Plaintiff] down for animal allergies." (ECF No. 1, PageID.10.) Defendant Potila denied Plaintiff's appeal on September 7, 2020, telling Plaintiff that he was tired of Plaintiff's complaints and grievances. Plaintiff asserts that despite the fact that Defendants Schroeder and Potila transferred "select[] inmates" during this time period, they refused to grant his request for a transfer. (*Id.*)

Plaintiff states that Defendant Potila threatened to transfer Plaintiff to Level IV if he continued to file grievances and to pursue his ADA appeal. Consequently, Plaintiff feared retaliation and chose not to finish exhausting his administrative remedies. At some unspecified time, Plaintiff spoke with Defendant Schroeder "when she made her rounds to the units regarding

Defendant Potila's threat to retaliate against [Plaintiff] and put him in level 4 if he wrote another grievance against [Potila] or pursued his ADA appeal." (*Id.*, PageID.11.) Plaintiff alleges that "Defendant Schroeder told Plaintiff that she too was sick and tired of Plaintiff causing so many problems about the dogs and conditions of confinement and tired of him writing complaints and grievances and having people calling and complaining about him and that she agreed with Defendant Potila." (*Id.*) Plaintiff filed a complaint with the Michigan Department of Civil Rights (ECF Nos. 1-17 and 1-18) that has never been resolved. Plaintiff continued to be housed in the unit with dogs for an additional nine months until he was transferred.

Plaintiff's continued ordeal caused him to suffer a mental health breakdown. Plaintiff was placed on psychotropic medications for severe depression and anxiety. On July 21, 2021, Plaintiff was transferred from LMF to the Kinross Correctional Facility (KCF), to be placed in an outpatient program. Upon his arrival at KCF, Defendant MDOC still attempted to place Plaintiff in B Unit, which was a housing unit with dogs. Plaintiff refused to lock in B Unit and was threatened with administrative segregation. Plaintiff was eventually placed in C Unit and his medical provider gave him a Special Accommodation Notice not to be housed in units with animals.

Plaintiff asserts that Defendants violated his right of access to courts and to be free from retaliation under the First Amendment and his Eighth Amendment right to be free from harassment and exposure to allergens, as well as under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA). Plaintiff also alleges that Defendants violated his rights under state law. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Access to the Courts

Plaintiff makes a conclusory assertion that Defendant Pancheri interfered with his outgoing mail in an effort to prevent him from being able to access the courts. It is clearly established that

prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to nonfrivolous pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff's access to the courts claim against Defendant Pancheri is entirely conclusory. Plaintiff fails to allege what outgoing mail was interfered with, who the intended recipient was, or whether it concerned a contemplated or ongoing non-frivolous legal action. Conclusory allegations

of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff's access to the courts claim is properly dismissed.

**B.      Eighth Amendment**

Plaintiff claims that Defendants Washington, BHCS, Heintriz, Pancheri, Schroeder, and Potila violated his rights under the Eighth Amendment when they continued to house him where he would be exposed to dog dander. (*See* ECF No. 1, PageID.18.) The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. As relevant to Plaintiff's claims, the Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of

9

confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.      Defendant Heintriz

Plaintiff states that Defendant Heintriz approved his transfer to URF, which had a dog program. However, Plaintiff was not housed in either of the dog program units at URF. Plaintiff fails to allege any facts showing that Defendant Heintriz knew that Plaintiff would be exposed to dog dander or that Defendant Heintriz acted with deliberate indifference to Plaintiff's serious medical needs. Plaintiff also implies that Defendant Heintriz must have approved his transfer from URF to LMF. However, Plaintiff fails to allege specific facts showing that Defendant Heintriz personally approved the transfer to LMF or that Defendant Heintriz was aware of any danger to Plaintiff due to the transfer. As noted above, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Plaintiff's Eighth Amendment claim against Defendant Heintriz is properly dismissed.[1]

---

[1] The Court notes that this claim also appears to be untimely. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).

### 2.    Defendant Pancheri

Once at URF, Plaintiff suffered from severe allergic reactions and asthma attacks, which prompted his placement on the East Side of the facility, away from dogs. Plaintiff claims that Defendant Pancheri harassed him about his dog allergies. The facts alleged by Plaintiff suggest that Defendant Pancheri's harassment consisted of verbal harassment. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Pancheri arising from Pancheri's alleged verbal abuse.

Plaintiff also makes a conclusory assertion that Defendant Pancheri subjected Plaintiff to inhumane living conditions and allowed staff to destroy his personal property at some point while

he was in administrative segregation. Plaintiff fails to allege any specific facts in relation to these claims. Therefore, these conclusory assertions of unconstitutional conduct fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Finally, Plaintiff claims that in February of 2020[2], Defendant Pancheri requested that Plaintiff be transferred to LMF because he was angry that Plaintiff had been elected Unit Block Representative for Marquette Unit. Plaintiff states that LMF only had one level II unit, which was used as a dog leader program unit. When Plaintiff asked Defendant Pancheri about this, he responded that he did not care about Plaintiff's concerns and that if the transfer was approved by the Lansing Transfer Coordinator, Plaintiff would be someone else's problem. Because Plaintiff alleges that Defendant Pancheri knowingly arranged a transfer which would subject Plaintiff to being exposed to dog dander even though he knew that Plaintiff was severely allergic, the Court concludes that this claim is not properly dismissed on initial review.

### 3.    Defendants MDOC and BHCS

The BHCS is a part of the MDOC. *Powell v. State Bureal*, No. 3:22-cv-12496, 2023 WL 3129455, at *3 (E.D. Mich. Apr. 27, 2023). Plaintiff may not maintain a § 1983 action against the MDOC or the BHCS. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has

---

[2] The Court notes that this claim appears to be barely within the pertinent statute of limitations, depending on the specific date of the conduct and the period of time it took Plaintiff to exhaust his remedies. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000).

not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC, which includes the BHCS, is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Therefore, Plaintiff's § 1983 claims against Defendants MDOC and BCHS are properly dismissed on grounds of immunity.

### 4.     Defendants Potila and Schroeder

Plaintiff alleges that Defendants Potila and Schroeder were aware of his serious allergic reaction to dogs, but did not limit his contact with items contaminated with dog dander or move him to a level II housing unit without dogs. Although Plaintiff has by no means proven his claims, at this stage of the proceedings, the Court concludes that Plaintiff has alleged sufficient facts to support Eighth Amendment claims against Defendants Schroeder and Potila.

### 5.     Defendant Washington

Plaintiff asserts that Defendant Washington was on notice of his severe allergy to dogs by virtue of his grievances and complaints. Plaintiff fails to allege that Defendant Washington took any action against him, other than to suggest that Defendant Washington failed to adequately supervise her subordinates or respond to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The

13

acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendant Washington encouraged or condoned the conduct of her subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about Defendant Washington's conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Washington was personally involved in the alleged violations of Plaintiff's constitutional rights. Conclusory allegations of unconstitutional conduct without specific factual

14

allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 Eighth Amendment claim against Defendant Washington is premised on nothing more than respondeat superior liability, it is properly dismissed.

### C.     Retaliation

Plaintiff asserts that Defendants Heintriz, Pancheri, Potila, and Schroeder retaliated against him in violation of the First Amendment. (*See* ECF No. 1, PageID.16.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.     Defendant Heintriz

As noted above, Plaintiff states that Defendant Heintriz approved his transfer to URF, which had a dog program, but concedes that he was not housed in either of the dog program units at URF. The complaint is devoid any facts showing that Defendant Heintriz knew that Plaintiff would be exposed to dog dander or that Plaintiff would be at risk. Plaintiff appears to be asserting that Defendant Heintriz also approved the transfer to LMF, but he fails to allege any facts in support of this assertion. In addition, even if Defendant Heintriz did approve the transfer to LMF, Plaintiff fails to allege any facts showing that Defendant Heintriz was aware of any grievances or complaints he had filed, or that Defendant Heintriz was motivated by a desire to retaliate against

Plaintiff because of his complaints. As previously noted by the Court, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Plaintiff's retaliation claim against Defendant Heintriz is properly dismissed.

### 2.    Defendant Pancheri

Plaintiff alleges that he engaged in protected conduct by filing several written and verbal complaints against Defendant Pancheri for harassment and retaliation, and that he filed a complaint and grievance on Defendant Pancheri for allowing staff to destroy Plaintiff's personal property while Plaintiff was being housed in administrative segregation. Plaintiff further alleges that in February of 2020, Defendant Pancheri was angry about Plaintiff being elected as the Unit Block Representative for Marquette Unit and told Plaintiff to get his affairs in order because he was going to be transferred to LMF so that someone else would have to deal with his grievances and complaints. Defendant Pancheri specifically told Plaintiff that he was tired of him filing complaints, grievances, and lawsuits against staff, as well as helping other prisoners with their grievances and lawsuits. Plaintiff asked how he could be transferred to LMF when it only had one level II unit, which was used for the leader dog program. Defendant Pancheri stated that he did not care, and that if the Lansing Transfer Coordinator approved the transfer, he would be someone else's problem. The Court concludes that Plaintiff has alleged sufficient facts to state a retaliation claim against Defendant Pancheri.

### 3.    Defendants Potila and Schroeder

Plaintiff contends that on September 2, 2020, Defendants Potila and Schroeder retaliated against him in violation of the First Amendment by denying his ADA request to be placed in a dog free level II housing unit and to limit his contact with items contaminated with dog dander. Plaintiff's appeal of the denial was denied on September 7, 2020, by Defendant Potila, who told

Plaintiff that he was tired of his complaints and grievances. Plaintiff asserts that Defendants Schroeder and Potila transferred "select inmates" during this period but refused to do the same for Plaintiff. (ECF No. 1, PageID.10.) Plaintiff alleges that Defendant Potila told Plaintiff that if he filed another grievance or pursued his ADA appeal any further, he and Defendant Schroeder would have Plaintiff transferred to level IV. Consequently, Plaintiff feared retaliation and chose not to finish exhausting his administrative remedies. Plaintiff filed a complaint with the Michigan Department of Civil Rights (ECF Nos. 1-17 and 1-18) that was never been resolved. Plaintiff continued to be housed in the unit with dogs for an additional nine months until he was transferred to a dog unit at LMF. The Court concludes that Plaintiff has alleged sufficient facts to state retaliation claims against Defendants Potila and Schroeder.

> **D.    ADA and RA**

Plaintiff states that each of the named Defendants violated his rights under the ADA and RA.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2). Similarly, § 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998), and the RA has also been found to apply to state prisons and inmates. *See, e.g.*, *Wright v. N.Y. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (discussing that "[b]oth the ADA and the RA undoubtedly apply to state prisons and their prisoners" (citation omitted). The proper defendant for Title II ADA claims and RA claims is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002). Plaintiff has named the MDOC, the MDOC Insurance Company Unknown Party #1, and the State of Michigan as Defendants in their official capacities and the following Defendants in both their individual and official capacities: Washington, BHCS, Heintriz, Pancheri, Schroeder, and Potila. Because Plaintiff may not pursue ADA and RA claims against Defendants in their individual capacities, any intended ADA and RA claims against Defendants in their individual capacities will be dismissed.

The State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA and RA. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Mingus*, 591 F.3d at 482. If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims. Likewise, the Court assumes, without deciding, that Defendants are not immune from liability in their official capacities under the RA. *See, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1047 (E.D. Mich. 2005) (citing cases).

18

Upon review, therefore, the Court concludes that Plaintiff's allegations are sufficient to warrant service of Plaintiff's ADA claims on the named Defendants.

However, the courts have recognized that, where an entity is named as a defendant, official-capacity claims against employees of the entity are redundant. *See Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014) (finding official-capacity suits against defendant agency's employees superfluous where the state and agency were also named as defendants). Because the MDOC is a Defendant in this action, Plaintiff's official-capacity claims against Defendants Washington, Heintriz, Pancheri, Schroeder, and Potila will be dismissed as superfluous.

As for Defendant MDOC Insurance Company Unknown Party #1, Plaintiff fails to allege any facts indicating that Unknown Party #1 had any part in preventing Plaintiff from receiving an ADA accommodation or was involved in violating Plaintiff's rights under the ADA or RA. Therefore, Plaintiff's ADA and RA claims against MDOC Insurance Company Unknown Party #1 are properly dismissed. Thus, the Court will dismiss Plaintiff's ADA and RA claims against all Defendants other than the State of Michigan, the MDOC, and BHCS.

### C.      State Law Claims

Plaintiff also alleges that Defendants violated state law. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law fail to state a claim under § 1983.

Further, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues."

19

*Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). As set forth herein, Plaintiff's federal claims against Defendants Heintriz, Washington, and MDOC Insurance Company Unknown Party #1 will be dismissed. The Court concludes that as to these Defendants, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Therefore, Plaintiff's state law claims against Defendants Heintriz, Washington, and MDOC Insurance Company Unknown Party #1 will be dismissed without prejudice. Plaintiff's state law claims against Defendants Pancheri, Schroeder, Potila, State of Michigan, the MDOC, and BHCS will remain in the case.

<u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants Heintriz, Washington, and MDOC Insurance Company Unknown Party #1 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants Heintriz, Washington, and MDOC Insurance Company Unknown Party #1 will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: the ADA and RA claims against Defendants Pancheri, Schroeder, and Potila, and all intended § 1983 claims against Defendants BHCS and MDOC. The Court will also dismiss all of Plaintiff's Eighth Amendment claims against Defendant Pancheri *except* Plaintiff's Eighth Amendment claim premised upon Defendant Pancheri's role in Plaintiff's transfer to LMF. Plaintiff's Eighth Amendment and retaliation claims against Defendants Schroeder and Potila, and his ADA and RA claims against Defendants State of Michigan, the MDOC, and BHCS remain in the case. Plaintiff's Eighth Amendment claim premised upon Defendant Pancheri's role in

20

Plaintiff's transfer to LMF also remains in the case. Additionally, Plaintiff's state law claims against Defendants Pancheri, Schroeder, Potila, State of Michigan, the MDOC, and BHCS remain in the case.

An order consistent with this opinion will be entered.


Dated:   August 21, 2023                        /s/ Jane M. Beckering
                                                Jane M. Beckering
                                                United States District Judge