**FILED - GR**
November 18, 2024 1:07 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW  SCANNED BY: _____ /18/18

UNITED STATES DISTRICT COURT

IN THE WESTERN DISTRICT OF MICHIGAN

KUSHAWN MILES-EL

     Plaintiff,

v.

STATE OF MICHIGAN, et al.,

     Defendants.

_____/

Case No. 2:23-cv-31

Hon. Jane M. Beckering

Mag. Maarten Vermaat

John Thurber

Assistant Attorney General

Attorney for MDOC Defendants

P.O. Box 30217

Lansing, MI 48909

_____

Kushawn Miles-El (#237011)

In Pro Per

Lakeland Correctional Facility

141 First Street

Coldwater, MI 49036

_____

### PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE'S REPORT & RECOMMENDATION

COMES NOW, Kushawn Miles-El, Plaintiff in Pro Per, and submits Plaintiff's Ojections to the Report and Recommendation.

### I. INTRODUCTION

On October 31, 2024, Magistrate Maarten Vermaat filed his Report & Recommendation. Plaintiff submits various objections in response, that the R & R should be rejected/denied. The R & R failed to demonstrate that Summary Judgment is appropriate as a matter of law, i.e., (i) That no genuine issue of material facts exists on Mr. Miles-El's First Amendment claims; Eighth Amendment claims; and ADA/RA claims; and (ii) That the Court decline to exercise supplemental jurisdiction over Miles-El's state law claims.

The R & R recommended granting Defendant's Motion for Summary Judgment and Dismiss the case. The R & R found that Miles-El failed to show that Defendants violated his First or Eighth Amendment or the ADA/RA. Now Plaintiff Miles-El raises various objections to the R & R.

*1*

## II. STANDARD

Under Rule 72 of the Federal Rules of Civil Procedure, the Court must review de novo the portions of the R & R to which objections have been properly made:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify  the recommended disposition receive further evidence, or return the matter  to  the  magistrate judge with instructions.

Fed.R.Civ.P. 72(b)(3).

## III. ANALYSIS

OBJECTION #1:

A. First Amendment Claim Against "PANCHERI"-Retaliation.

First, Plaintiff objects to the R & R as it relates to Defendant Pancheri, because the R & R did not view the facts in the light most favorable to Plaintiff as is manditorily required.  When viewed under this light, Plaintiff argues that there is a "genuine dispute" about whether Pancheri selected Plaintiff to be transferred to LMF for engaging in protected conduct activity as well as assisting other inmates to engage in protected conduct activity which the (Defendant Pancheri has already conceded to the First Element) and whether Plaintiff's transfer to LMF was an Adverse Action that resulted in a number of foreseeable consequences against Miles-El, based upon Retalitory Reasons.

Summary Judgment is appropriate only when there is no genuine dispute of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Peffer v. Stephens, 880 F.3d 256, 262 (6th Cir. 2018).  If the movant carries the burden of showing there is an absence of evidence to support the claim or defense, then the party opposing the motion "must demonstrate 'by' affidavits, depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of material fact for trial. See Twin City Fire Ins. Co. v. Adkins, 400 F.3d 293, 296 (6th Cir. 2005).

When considering a motion for summary judgment, the Court must "view[] the factual evidence and draw [] all reasonable inferences in favor of the nonmoving party." See McLean v. 988011 Ontario Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Thus, any direct evidence offered by Plaintiff in response to a Summary Judgment Motion "must be accepted as true."  See Muhammad v. Close, 379 F.3d 413, 416 (6th Cir. 2004)(citing Adams v. Metira, 31 F.3d 375, 382 (6th Cir. 1994).

The R&R intentionally ignored, disregarded and omitted all pertinent portions of Plaintiff's "Affidavit and Objections to the Defendants First and Second Motion

2

for Summary Judgment". The R&R also intentionally ignored, disregarded and omitted all pertinent and relevant portions of Mr. Loren Slough's Sworn Affidavit/Declaration, which was attached to Plaintiff's Affidavit and Objection to Defendant's Motion for Summary Judgment as (Appendix 1).

Specifically, Plaintiff stated that he was engaged in protected conduct by filing non-frivolous written and verbal complaints against Pancheri for harassment, retaliation and impeding his right to access the courts Further Pancheri was mad about Plaintiff being elected the unit block representitive and told Plaintiff to get his affairs in order because "he would be transferred to LMF" so someone else would have to deal with his grievances and complaints.

Pancheri, specifically told Plaintiff he was tired of him filing complaints, grievances and lawsuits against staff and helping other inmates with grievances and lawsuits. Plaintiff asked Pancheri how could he be transferred to LMF when it only had one level II unit which was used for the Leader Dog Program. Pancheri told Plaintiff that he didn't care if the transfer coordinator approved the transfer Plaintiff would be someone else's problem.

Plaintiff contends that MDOC employees at the institutional level "operates on a custom, policy, pattern and practice of having inmates , including Miles-El transferred because of complaints, grievances, and lawsuits, or just because staff does not like the inmate." Plaintiff stated that out of his "31-years" in MDOC has not only been a victim of "retalitory transfers" but has directly witnessed a prisoner counselor have an inmate transferred.

Mr. Loren Slough (Plaintiff's Witness) Affidavit specifically stated:

I, Loren Slough, affiant states under the penalty of perjury, pursuant 28 U.S.C. 1746, the following:

1. That at all times relevant I was confined at the chippewa correction facility in February 2020.

2. that at all times relevant I was housed in Marquette unit (URF-East) at the same time as inmate Miles-El #237011 was housed in Marquette-unit.

3. That Miles-El on many occasions helped me with grievances, complaint against URF-Staff in Marquette unit.

4. Miles-El helped a lot of inmates in Marquette unit with grievances , complaints against unit officers and PC Pancheri.

5. In January 2020 I spoke directly to PC Pancheri about running to be block representative and PC Pancheri expressed to me his dislike for Miles-El because he had filed several grievances against him.

6. PC Pancheri expressed to me that did not want Miles-El to be unit representative because he is only going to cause trouble for him and unit officers.

7. Pancheri expressed to me and the unit officers that if Miles-El wins he would get him transferred to Alger Max.

8. Pancheri stated to me that he called Alger to see if they wanted to swap prisoners and do a security screen & submit it to the transfer coordinator and get Miles-El gone.

9. After Miles-El won the unit representative position , again while talking to PC Pancheri, he told me directly that he called the transfer coordinator and told her to transfer Miles-El to LMF and swap him out for someone else.

10. If necessary and I am called to testify in court under oath, I am willing to testify to the facts contained in this affidavit.

Pursuant to 28 U.S.C. 1746 I Loren Slough swear under the penalty of perjury that the above foregoing statements is true and correct. (Appendix 1)

Defendants argued that Miles-El cannot establish, the second element, that a Defendant took adverse conduct against him. To establish the second element of a retaliation claim, a prisoner-plaintiff must show an adverse action by prison official that would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Thaddeus-X, 175 F.3d at 396.

Defendant Pancheri argues that he did not take adverse action against Miles-El for two reasonss. First, PC Pancheri attests that he has no authority to transfer a prisoner and has no say in where a prisoner is transferred and housed. PC Pancheri stated that "I did not have the authority to transfer prisoners. Nor did I have the authority to determine where the MDOC would transfer a prisoner. (ECF No. 34-4, Page ID. 366 (Pancheri affidavit))

Departmental Technician/Transfer Coordinator Peterson attested that "SHE PREPARED THE "ORDER" TO TRANSFER MILES-EL TO LMF ON FEBRUARY 10, 2020," "TO ACCOMMODATE BEDSPACE NEEDS." (ECF 34-7, PageID.377 (Peterson affidavit).) Peterson states that "Pancheri did not select Miles-El for transfer" and he did not have the authority to transfer Miles-El." (Id., PageID.378.) The only involvement that Pancheri had with Miles-El was the routine preparation of a security classification screen, which he is required to prepare for any prisoner who was going to be transferred to a new facility. (Id.)

In the opinion of the undersigned, Miles-El cannot show adverse action was taken against him by Defendant PC Pancheri because Pancheri had no authority to transfer Miles-El and had no input in where Miles-El would be transferred. (ECF No. 45, PageID.454), more importantly no adverse action was taken against him due to his routine transfer for bedspace purposes.(ECF No. 45 PageID.455).
Plaintiff OBJECTS to the R&R for the following Reasons:

4

First, the R&R intentionally ignored, disregarded and omitted Plaintiff's Affidavits, Verified Complaint and the "AFFIDAVIT OF LOREN SLOUGH". The R&R is "arbitrary, capricious and bias"; and views all the evidence, statements and affidavits in LIGHT MOST FAVORABLE TO THE DEFENDANTS", even though Plaintiff submitted his own affidavit and an affidavit of inmate Loren Slough.

The R&R "arbitrarily" weighed the evidence and determined the truth of the matter and determined that there is no genuine issue for trial." Contrary to Muhammad v. Close, 379 F.3d 413, 416 (6th Cir. 2004); and Anderson, supra, 477 U.S. at 249. In Anderson, supra, the Court held that in this context, a court "must shy away from weighing the evidence and INSTEAD VIEW ALL THE FACTS IN THE LIGHT MOST FAVORABLE TO THE NONMOVING PARTY and DRAW ALL JUSTIFIABLE INFERENCES IN THEIR FAVOR. Id. See also Wyat v. Nissan N. Am. Inc., 999 F.3d 400, 410 (6th Cir. 2021); White v. Baxter Healthcare Corp., 533 F.3d 381, 390 (6th Cir. 2008). "Credibility determinations, the weighing of the evidence, and the drawing of ligitimate inferences from the facts are "Jury Functions," "Not those of a Judge." Anderson, supra at 255.

Plaintiff asserts that he supported his opposition with "affidavits" to create a genuine dispute of material fact for trial. Fed.R.Civ.P. 56(e)(2), (3).

Next, pursuant to FRE 201, 202, and in further support of his Objection to the R&R, Plaintiff asks the Court to "TAKE JUDICIAL NOTICE" of Plaintiff's "MDOC Security Classification Screen - Review" entered and Dated: (02/06/2020) by Adam Pancheri; and (ECF No. 34-7, PageID.377 (Peterson affidavit). Plaintiff points out to the Court that Transfer Coordinator lied and committed Perjury in her affidavit and her affidavit contradicts her statement and Pancheri's affidavit.

Departmental Technician/Transfer Coordinator Peterson attested that she "PREPARED THE ORDER TO TRANSFER MILES-EL TO LMF ON FEBRUARY 10, 2020, "to accommodate bedspace needs." (ECF no. 34-7 PageID.377).

Plaintiff asserts that a "transfer order" must be done at the same time as the screen or before and according to Appendix 1- Plaintiff's Security Classification Screen, "On 02/06/2020" Pancheri screened Plaintiff and entered it on that date." Plaintiff "TRANSFERRED TO LMF at or around 05:00 a.m." before Transfer Coordinator Peterson reported to work and Plaintiff cannot be transferred without a completed transfer order. This demonstrates that Peterson is lying about Pancheri not having any say or the ability to have Plaintiff transferred.

In Support, pursuant to FRE 201, 202, Plaintiff asks the Court to "TAKE JUDICIAL NOTICE", of Siggers-El v. Barlow, 412 F.3d 693 (6th Cir. 2005), where Siggers-El engaged in protected conduct because of his non-frivolous grievances and the Residential Unit Manager transfer of him to another prison was an adverse action because it would deter a prisoner of ordinary firmness from continuing to

to engage in protected conduct as the inmate was not only transferred, but was subjected to foreseeable negative consequences. (ECF No. 1)(Plaintiff's verified complaint).

In further support of his objections to the R&R, Plaintiff "relies on the sworn testimony of Assistant Deputy Warden, (ADW) Roger" in Siggers-El v. Barlow, 412 F.3d 693, 698 (6th Cir. 2005).

> "ADW Roger testified that apart from Transfers for Disciplinary or Medical Reasons, "99.9 Percent of the time" transfers are DONE on a TRADE BASIS. Transfers conducted on a trade basis are usually "initiated when one facility informs another that it needs additional prisoners." At that point, Transfer Coordinator at the receiving facility "would let the RUM know that a "specific number of inmates are needed for an exchange." If there are prisoners who have requested a transfer they may already be "in the transfer pool." Otherwise, it is the RUM or Designee's "WHO SELECTS, WHICH INMATES TO TRANSFER." Although the transfer coordinator has the ultimate authority to approve the transfer, if the "selected inmates meets the transfer requirements, the transfer coordinator "will not request different prisoners to trade."
>
> ADW Rogers also testified that a RUM would NORMALLY PREPARE a TRANSFER SCREEN ONLY after the Transfer Coordinator INFORMS HIM/HER that another Facility REQUESTED a transfer. A RUM "would typically have NO MORE THAN A WEEK'S NOTICE of a TRANSFER REQUEST [BEFORE] THE TRANSFER WOULD NEED TO OCCUR. Moreover the "TRANSFER ORDER WOULD BE "[PREPARED]" at or about the SAME TIME as the "[TRANSFER SCREEN]" and "BY THE SAME PERSON (that is, by the RUM)."

Siggers-El v. Barlow, 412 F.3d at 698, 701.

Plaintiff asserts again that his security screen sheet was prepared and entered on 02/06/2020 by Defendant Pancheri and Peterson stated in her sworn affidavit that she PREPARED the TRANSFER ORDER on 02/10/2020, which clearly CONTRADICTS Pancheri's Affidavit and Peterson's Affidavit based on Plaintiff's Affidavit, Loren Slough's Affidavit and the sworn testimony of Assistant Deputy Warden (ADW) Roger's testimony in Siggers-El v. Barlow, which he stated that it is the RUM's job to prepare transfer screens and select prisoners to trade.

Please "TAKE JUDICIAL NOTICE", that Defendant Pancheri, Transfer Coordinator Peterson and Plaintiff Miles-El have submitted an Affidavit and the Affidavit of Loren Slough, (evidence) that a "Material Dispute Remains as to Whether Defendant Pancheri, actions was Motivated by Plaintiff's Protected Conduct to Select him to be Transferred.

For example, the R&R, Pancheri and Peterson stated that Miles-El "was transferred "to accommodate bed space needs." ("THAT DOES NOT EXPLAIN HOW PLAINTIFF MILES-EL WAS ["CHOSEN"] OUT OF ALL THE OTHER 2400-PRISONERS AT THE

6

CHIPPEWA CORRECTIONAL FACILITY (URF)? - In other words Peterson's affidavit is (deceitful and misleading) and does not establishes an innocent motive for a transfer to be scheduled (because she stated she prepared a transfer order on 2/10/2020 after Miles-El was already transferred to LMF), and IT DOES NOT RULE OUT A RETALITORY MOTIVE FOR MILES-EL's SELECTION OUT OF 2400 Prisoners as the Person to fill that spot.

Still, Plaintiff contends that taken in light most favorable to Miles-El, the evidence suggest a retalitory motive for Plaintiff's Transfer that would encompass Pancheri SUCH THAT A REASONABLE JURY MIGHT RULE IN PLAINTIFF'S FAVOR. Plaintiff argues that for all the above foregoing reasons stated he has created a question of fact as to whether the transfer from URF to LMF was an Adverse Act. See also Heard v. Strange, 2018 U.S. Dist Lexis 149290, at [*11]-[*12]; Heard v. Strange, 2019 U.S. Dist. Lexis 127181; 2019 U.S. Dist. Lexis 92791; 2019 U.S. Dist. Lexis 93261, at [*3].

Summary Judgment in favor of Defendant Pancheri on Plaintiff's First Amendment Retaliation claim is improper since Plaintiff's verified allegations of retaliation and adverse action turns on the questions of "motive and intent." Sworn affidavits, although denied by Defendant Pancheri, creates a question of fact "prohibiting Summary Judgment prior to trial."

7

OBJECTION #2:

B. First Amendment Claims against Defendants Schroder and Potila - Retaliation:

Second, Plaintiff Miles-El maintains that the R&R arbitrarily and intentionally "did not view the facts in the light most favorable to him as manditorily required by clearly established law. When viewed under this light, Plaintiff argues there is a genuine dispute about whether Defendants Potila and Schroeder took adverse actions against Miles-El and threatened to put Plaintiff in a Higher Security Level IV, with more restrictions and less privileges if he continued to file grievances and complaints regarding his allergies to dogs and/or if he appealed the denial of his ADA-Special Accommodation Requests for Retaliatory reasons.

Summary Judgment is appropriate only when there is no genuine dispute of material fact. Fed.R.Civ.P. 56(a). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Anderson, supra at 249; Peffer, supra at 262. When considering a motion for summary judgment, the Court must "view[] the factual evidence and draw[] all reasonable inferences in favor of the nonmoving party." Muhammad, supra at 416; McLean, supra at 800; Anderson, supra at 249; White, supra at 390; Wyat, supar at 410.

The R&R recommended granting Defendants Potila and Schroeder's Motion for Summary Judgment. The R&R found that Defendants have shown that no adverse action was taken against Miles-El. (ECF No. 45, PageID.457). Further in the opinion of the R&R, Miles-El cannot show that he was threatened with adverse action by DW Potila or Warden Schroeder from the explanation that he could be moved into the Level IV Unit to accommodate his medical condition pending transfer to a different facility. For these reasons, it is respectfully recommended that the Court conclude that no genuine issue of material fact exists entitling Defendants to Summary Judgment. (ECF No. 45, PageID. 458).

Plaintiff Objects to the R&R as to Plaintiff's Retaliation claim against Potila and Schroeder and raises several objections to the R&R.

The R&R intentionally ignored, disregarded and "omitted" Affidavits submitted by Plaintiff twice to the Defendants Motions for Summary Judgment, the Affidavits of Anthony King #512785, that Plaintiff submitted with his "first affidavit and objection to the Defendants Motion for Summary Judgment for Failure to Exhaust" and made reference to and incorporated in his second affidavit and objection to the Defendants Second Motion for Summary Judgment.

8

Plaintiff specifically stated in his affidavits and verified complaint, that On September 1, 2020, Plaintiff filed an ADA reasonable accommodation request, seeking to be placed in a level II housing unit without dogs and to limit his contact with items contaminated with dog dander. On September 2, 2020, Plaintiff's accommodation request was denied by Defendant MDOC and Defendant Potila because "health care did not have [Plaintiff] down for animal allergies." (ECF No. 1, PageID. 10) Defendant Potila denied Plaintiff's appeal on September 7, 2020, telling Plaintiff that he was tired of Plaintiff's complaints and grievances. Plaintiff asserts that despite the fact that Defendants Schroeder and Potila transferred "select[] inmates" during this time period, they refused to grant his request for a transfer.(Id.)

> Plaintiff states that Defendant Potila Threatened to transfer him to Level IV if he continued to file grievances and to pursue his ADA appeal. Consequently, Plaintiff feared retaliation and chose not to finish exhausting his administrative remedies . At some unspecified time, Plaintiff spoke with Defendant Schroeder various times "when she made her rounds to the units regarding Defendant Potila's threat to retaliate against [Plaintiff] and put him in level 4 if he wrote another grievance against [Potila] or pursued his ADA appeal." (Id., PageID. 11) Plaintiff alleges that "Defendant Schroeder told Plaintiff that she too was sick & tired of Plaintiff causing so many problems about the dogs and conditions of confinement and tired of him writing complaints and grievances and having people calling and complaining about him and that she agreed with Defendant Potila." (Id.) Plaintiff filed another verified complaint with the Michigan Department of Civil Rights (ECF Nos. 1-17 and 1-18).

Defendant Schroeder, Potila and the R&R stated that Miles-El "cannot show that he was threatened with adverse action by Defendant Potila and Schroeder from the explanation that he could be moved into the level 4 unit to accommodate his medical condition. (ECF No. 45, PageID 457-458).

Pursuant to FRE 201, 202, Plaintiff asks the Court to "TAKE JUDICIAL NOTICE" of Anthony King's Sworn Affidavit (ECF No. 18, PageID. 227.), which "contradicts" the R&R and the Defendant's affidavits that Miles-El cannot show that he was threatened with adverse action by Potila and Schroder. Mr. King's affidavit specifically states in relevant part:

> Affidavit of Anthony King #512785 In Support of Plaintiff Kushawn Miles-El
>
> I Anthony King #512785 swear under the penalty of perjury to the following events:
>
> 1. That on 2-10-20, 2-11-20 and 2-12-20, I was confined at the Alger Correctional Facility (LMF) Level II Spruce Unit.
>
> 8. Even after several times I seen Miles-El Stopping and Complaining to the Warden and P.A. Westcom during their rounds in Spruce unit about his severe allergic reactions to the dogs. She said she already spoke about that and if he keep complaining she "would have him put in segregation."

Mr. King's affidavit goes on to attest that Miles-El was threatened by the warden and agreed with Potila and if he continued to complain and file complaints he would be put in segregation and/or level 4. See (ECF No. 18, PageID. 227).

Plaintiff asks the court to "TAKE JUDICIAL NOTICE" in Defendant Schroeder's Affidavit that she did not DENY THREATENING PLAINTIFF WITH ADVERSE ACTIONS, if he did not stop filing complaints about his allergies to dogs. See (ECF No. 34-5).

In Hill v Lappin, 630 F.3d 468 (6th Cir. 2010), the Sixth Circuit held: ("being threatened with a transfer to a much MORE RESTRICTIVE LIVING ENVIRONMENT WITH FEWER PRIVILEGES WOULD "DETER" a person of ordinary firmness from exercising the Constitional right to file grievances.)" Id. at 475.

Plaintiff argues that the R&R intentionally disregarded, ignored and omitted Plaintiff's affidavit, verified complaint, and the affidavit of Anthony King and "only viewed the evidence in the light most favorable to the DEFENDANTS in violation of clearly established law and violates Article VI of the United States Constitution, Clause 2 & 3.

Plaintiff asserts that, when viewed under the light most favorable to him, Plaintiff argues there is a genuine dispute about whether Potila and Schroeder took adverse action or threatened to take adverse action against Miles-El and threatened to put him in segregation and/or level 4, if he continued to file grievances and complaints or appealed the denial of his ADA Special accommodation request.

In conclusion, Plaintiff Objects to the R&R for Defendants Potila and Schroeder as it relates to Plaintiff's First Amendment Claim - Retaliation, because the R&R omitted Plaintiff's Affidavit and Anthony King's Affidavit and failed to view the evidence in the light most favorable to Plaintiff.

In support of Defendants Motion for Summary Judgment, defendants relied upon their affidavits.  Defendants Schroeder and Potila also relied on grievance responses regarding plaintiff's request for special accommodation. PA Westcomb. In those responses the Warden stated, that:

> PA Westcomb reports that your condition is being closely monitored.  PA Westcomb also reports that you are receiving treatment for your condition and that there is no issue with your placement in Spruce Unit. If you should experience any new or worsening symptoms relating to your condition contact health services immediately. (ECF No. 34-5, PageID.369)(ECF No. 34-6, PageID.373).

Plaintiff relied on his own Affidavit and the Affidavit of Anthony King (ECF No. 18, PageID. 227).  Plaintiff asserts that this evidence creates a genuine dispute of material facts as to whether defendants threatened to take adverse

10

actions against him.    It is possible a reasonable jury could find, based on plaintiff's affidavit, anthony king's affidavit and sworn statements of defendants and other evidence in the record which is viewed in the light most favorable to Miles-El.

In short, viewing the evidence in the light most favorable to Miles-El, there is a genuine dispute of material fact as to Plaintiff was subjected to threats of adverse actions and retaliation by defendants for engaging in protected conduct and it would be an abuse of discretion and clear error to grant defendants Summary Judgment to Miles-El's First Amendment retaliation claims.

OBJECTION #3:

C. Eighth Amendment Claim:

The R&R recommended granting Defendants Motion for Summary Judgment. The R&R found that the records here shows that Defendants did not act with deliberate indifference to Miles-El's health condition or disregard a serious or excessive risk of harm to his condition in violation of the Eighth Amendment. Plaintiff raises several objections to the R&R.

First, Plaintiff objects to the R&R as it relates to his Eighth Amendment claims against Defendants. Because the R&R did not view the facts in the light most favorable to Plaintiff as is manditorily required. When viewed under this light, Miles-El argues that there is a "genuine dispute" about whether Defendants acted with Deliberate Indifference to his serious medical needs and the "failure-to-protect" Miles-El from conditions that posed a serious risk of harm to his health and safety.

Summary Judgment is appropriate only when there is no genuine dispute of material fact. See Anderson, supra, 477 U.S. at 249; Peffer, supra 880 F.3d 262. If the movant carries the burden of showing there is an absence of evidence to support the claim or defense, then the party opposing the motion "must demonstrate by "affidavits," depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of materarial fact for trial. Twin City Fire Ins. Co., supra, 400 F.3d at 296.

When considering a motion for summary judgment, the Court must "view[] the factual evidence and draw[] all reasonable inferences in favor of the nonmoving party." See McLean, supra, 224 F.3d at 800. Thus, "any direct evidence" offered by Plaintiff in response to a summary judgment motion "must be accepted as true." See Muhammad v. Close, 379 F.3d 413, 416 (6th Cir. 2004)(citing Adams v. Metira, 31 F.3d 375, 382 (6th Cir. 1994).

Plaintiff asserts that the R&R intentionally ignored, disregarded and omitted all pertinent portions of Plaintiff's Affidavits, Verified Complaint and Direct Evidence submitted by Plaintiff regarding his serious medical conditions and the ongoing "unnecessary and wanton infliction of pain and suffering." See (ECF No. 18, PageID.227-235). Specifically, Plaintiff stated:

12

On January 19, 2017, Plaintiff had his chronic care visit with his medical provider who documented Plaintiff's history of "Allergies." Plaintiff was "classified    as having "severe persistent asthma." (ECF No. 1, PageID.7.) It was "also noted" that Plaintiff's "asthma" was exercise induced, seasonal, and systemic, with a require - ment, for continuous steroid use, and that "aggravating factors included animals  . (Id.)

In October 2017, Plaintiff was transferred to URF and placed on the westside of the facility. Plaintiff had numerous severe allergic reactions  and asthma attacks. Plaintiff asserts that yard officers brought dogs into his  housing  unit, walked with the dogs, and shook plaintiff down and searched his property, which  exposed, plaintiff to allergens. Plaintiff filed a grievance, which prompted Plaintiff to be "moved to the East Side of URF because dogs should'nt be on that side of the prison

When plaintiff was sent to the east side, "he was ridiculed, criticized, and harass by "Pancheri" about his dog allergies. (Id.) Plaintiff states that Pancheri subject him to inhumane living conditions. While plaintiff was housed on the East Side, he filed multiple grievances regarding continued health issues placing staff and  the Director's Office on notice of his serious medical needs. Plaintiff also filed several written and verbal complaints against Pancheri for harassment, retaliation, and for making him a target" by telling other housing unit officers that Plaintiff, was helping other prisoners file complaints. (Id., PageID.8).

Plaintiff asserts that in February 2020, Pancheri was angry about Plaintiff being elected as the unit block representative for marquette unit and "told plaintiff to get his affairs in order because he was going to be transferred to Alger Correction Facility(LMF)" so that someone else would deal with his grievances and complaints Plaintiff asked Pancheri how could this happen when LMF only had one level II unit, which was used for the leader dog program. Defendant Pancheri stated that he didnt care, and that if the transfer coordinator approved the transfer, plaintiff would be someone else's problem.

## Also See the Affidavit of Loren Slough in Support:

On February 12, 2020, Plaintiff filed a grievance regarding his exposure to animal dander. Plaintiff appeal the denial of his grievance to steps II & III, alerting Defendant[] Schroeder and Washington of his situation. Plaintiff continued to have allergic reactions to the dogs, and he repeatedly brought these to the attention of unit officers, counselors, the Warden, the Deputy Warden, and Health Care Officials Defendant Schroeder and Potila failed to take any action to alleviate the threat to Plaintiff's health.

Plaintiff restricted allergy medication was increased from 25 mg to 50 mg, and his continuous use of steroid, breathing treatments, and skin creams, brought only a temporary relief. Plaintiff states the problem was "exacerbated" by the fact that his "clothes and bedding" were being washed with clothing and items that were contaminated with dog dander. (ECF No. 1, PageID.9; ECF No. 1-9).

## Also See Affidavit of Anthony King in Support: (ECF No. 18-1, PageID.241).

Plaintiff also stated in his affidavits that he "Suffered a Mental Breakdown", due the fact he suffered unnecessary and wanton infliction of pain, allergic reactions, asthma attacks, respirator and sinus infections, due to the dogs and

the lack of ventilation, severe heat index, airborne dust and mold that contributed to the substantial harm and exposure to Plaintiff's overall health.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of inmates." See Farmer v. Brennan, 811 U.S. 825, 832 (1994). The Eighth Amendment also "Prohibits" cruel and unusual punishments. The Supreme Court has held that a prison official's "deliberate indifference to conditions that pose a substantial risk to an inmates health and safety violates the Eighth Amendment. To determine whether an official's failure-to-protect or an official was deliberately indifferent to such conditions of confinement, the Sixth Circuit employs a two-pronged analysis with an objective and subjective component.

The objective prong ask whether the inmate was "incarcerated under conditions posing a substantial risk of harm. The subjective prong then ask whether "officials knew of and disregarded that excessive risk to the inmates health or safety. See Finley v. Huss, 102 F.4th 789 (6th Cir. 2024); Bishop v. Hackel, 636 F.3d 757, 766 (6th Cir. 2011).

Plaintiff asks the Court to please "TAKE JUDICIAL NOTICE" to Model Penal Code §403.2(2) and (3), as the Warden, Defendant Schroeder and Potila was the Alger Correctional Facility's "Chief Executive Officer" and had a "Mandatory Legal Duty "[t]o enforce the provisions of Law and Regulations of the Department of Corrections for the Administration of the Institution", "the government of its officers, and the treatment, training, employment, "CARE, Discipline, and Custody of the Prisoners;" and to "TAKE PROPER MEASURES TO [PROTECT] THE SAFETY of the PRISONERS and personnel of the institution." In which Plaintiff Miles-El has a Legitimate Citizen's expectation encased in his 'RELIANCE INTEREST' that the Wardens will carry out these legal duties. See also Michigan Administrative Code, R791.2205(a),(g), (h) "WARDEN DUTIES".

Plaintiff argues that in support of Defendants motion for summary judgment, Defendants Schroeder and Potila relied upon their affidavits in which they denied being deliberately indifferent to Miles-El's serious medical needs. Potila and Schroeder also relied on grievance responses and the Bureau of Health Care Services responses regarding Miles-El's allergic reactions to the dogs and decline in his health.

In those responses, Defendant Schroeder stated:

> PA Westcomb reports that your condition is being closely monitored. PA Westcomb also reports that you are receiving treatment for your conditions and that there is no issue with your placement in Spruce Unit. If you should experience any "new or worsening symptoms relating to your condition" contact health services immediately. (ECF No. 34-8, PageID.383)

Plaintiff argues that he relied on his own affidavits, direct evidence that he was being incarcerated under conditions that exposed his health to serious risk and harm and that prison officials actions were deliberately indifferent to his serious medical needs.

Miles-El also relied on the sworn affidavits/declarations of Mr. Loren Slough and Anthony King who both provided contradictory evidence that (a) Defendant Pancheri intentionally had Miles-El transferred to LMF; and (b) That Defendants Schroeder and Potila continued to threaten Miles-El each time he confronted and informed them about his serious medical conditions being exacerbated by the dogs and if he did not stop complaining they would have him placed in either segregation and/or level 4.

Plaintiff asserts that the R&R intentionally omitted the above evidence and that this evidence "creates a genuine dispute of material fact as to whether Defendants Pancheri, Potila and Schroeder acted with deliberate indifference towards Plaintiff's serious medical needs.

Plaintiff asserts that it is possible that a reasonable jury could find, based on Plaintiff's affidavit, verified complaint, affidavits of Anthony King and Loren Slough and the sworn affidavits of the Defendants and other evidence in the record which viewed in the light most favorable to Plaintiff that the Defendants acted with deliberate indifference towards his serious medical needs and violated the Eighth Amendment.

In short, viewing the evidence in the light most favorable to Plaintiff, there is a genuine dispute of material fact as to whether the Defendants was deliberately indifferent to Miles-El's serious medical needs, his health and safety and the failure-to-protect and it would be clear error and an abuse of discretion to grant summary judgment in favor of Defendants to Miles-El's Eighth Amendment claims.

Plaintiff avers, that even if one claim does not rise to an Eighth Amendment violation, that as a "collective whole" would constitute an 8th Amendment violation.

*15*

OBJECTION #4:

D. ADA and RA Claims - Disability Discrimination:

The R&R recommended granting defendants summary judgment. The R&R found in sum, because allegations of inadequate medical treatment do not state a claim for relief under the ADA or RA, and because Miles-El has not provided allegations much less evidence that he was denied the benefits of prison serivces or programs, the undersigned respectfully recommends that the Court grant Defendants summary judgment with respect to these claims. (ECF No. 45, PageID.464).

Plaintiff objects to the R&R because the R&R did not view the facts in the light most favorable to Plaintiff as manditorily required by law. Instead, the R&R viewed the evidence in the light most favorable to the Defendants. When viewed under this light, Plaintiff argues that there is a "genuine dispute" about whether the Defendants violated Miles-El's rights under the ADA/RA and whether Miles-El stated a claim for relief under the ADA or RA.

Summary Judgment is appropriate only when there is no genuine dispute of material fact. See Anderson, supra; Peffer, supra. When considering a motion for summary judgment, the court must "view[] the factual evidence and draw[] all reasonable inferences in favor of the nonmoving party." McLean, supra; Thus, any direct evidence offered by Plaintiff in response to a summary judgment motion "must be accepted as true." Muhammad, supra.

Plaintiff asserts that the R&R intentionally ignored, disregarded and omitted all pertinent portions of Plaintiff's affidavits and objections in opposition to the Defendants motion for summary judgment, verified complaint. Specifically, Plaintiff stated:

OOn September 1, 2020, Plaintiff filed an "ADA Reasonable Accommodation Request, Seeking to be Placed in a level II HOUSING UNIT WITHOUT DOGS" and "to LIMIT HIS CONTACT WITH DOGS AND ITEMS CONTAMINATED WITH DOG DANDER." On September 2, 2020, Plaintiff's ADA request was denied by Defendant MDOC. (ECF No. 1, PageID.10). Plaintiff asserts that despite the fact that Schroeder and Potila transferred "select[] inmates"[] for "College Programs; and Medical Transfers, i.e. (diabetics) and individuals with weak immune systems." Plaintif was denied his request to be transferred to a level II unit without dogs.(Id.)

*16*

Plaintiff continued to be housed in the unit with dogs for an additional 9-months until he was transferred. (ECF Nos. 1-17 and 1-18).

Plaintiff also stated in his affidavits that he was <u>deprived of and denied the</u> <u>services of using the Dayrooms, or Participate in Dayroom activities, meal</u> <u>programs because the level II Inmates were made to eat breakfast, lunch and dinner</u> <u>in the housing unit DAYROOMS, so Plantiff never ate his meals, Plaintiff was also</u> <u>denied use of the Store Machines and Kiosks Machines in the units because of the</u> <u>Dogs and the Dog Handlers.</u>

Plaintiff asks the Court to <u>"TAKE JUDICIAL NOTICE"</u> of his Verified Complaint and Affidavits, regarding his ADA/RA claims. Plaintiff NEVER STATED NO WHERE IN HIS COMPLAINT OR AFFIDAVITS THAT HE WAS DENIED <u>"MEDICAL TREATMENT"</u> in violations of the ADA/RA statute, Plaintiff has always argued that he was denied <u>"Reasonable</u> <u>Accommodations"</u> becaue of his disability and that he could not use the dayrooms, kiosks machines, store machines or eat his meals because of the dogs.

In Plaintiff's Grievance, he clearly stated for his RELIEF: (<u>Plaintiff's</u> <u>Resolution: "To be IMMEDIATELY TRANSFERRED AWAY FROM THE DOGS."</u>) See Defendants (Exhibit 2, 82; ECF No. 34-8, PageID.384).

Plaintiff argues that because the Defendants failure to grant him a reasonable accommodation, impeded his ability to participate in or benefit from prison programs and service, i.e. use of the store machines, meal programs, dayrooms, use of kiosks machines. Because failing to grant Miles-El a reasonable accommodation is <u>"itself direct evidence of discrimination"</u>, Plaintiffs who meets this burden need not provide additional evidence of discriminatory intent. Clearly established case law makes clear that intentional discrimination and failure to accommodate are independent theories. Plaintiff's can avoid summary judgment by relying on either direct or indirect evidence of discriminatory intent. See <u>MJ ex</u> <u>rel J.J. v. Akron City Sch Dist Bd of Educ. 1 F.4th 436, 452-453 (6th Cir. 2021).</u> See also <u>Keller v. Chippewa Cnty Bd of Comm'r, 860 F.Appx 381, 385-386 (6th Cir.</u> <u>2021).</u>

Plaintiff argues that in support of defendants motion for summary judgment defendants relied on their affidavits in which they denied violating Miles-El's rights under the ADA/RA.

Plaintiff argues further that he relied on his own affidavits, his verified complaint, direct evidence of disability discrimination in violation of the ADA/RA.

Plaintiff asserts that it is possible that a reasonable jury could find, based on Plaintiff's affidavit, verified complaint that the defendants violated his rights under the ADA/RA due to his disability.

In short, viewing the evidence in the light most favorable to Plaintiff there is a genuine dispute of material fact as to whether the Defendants denial of a reasonable accommodation was discrimination and violated the ADA/RA and it would be clear error and an abuse of discretion to grant summary judgment in favor of defendants to Plaintiff's ADA/RA claims.


OBJECTION #5:

E. State Law Claims:

Plaintiff Objects to the R&R as it relates to his state law claims because there is a genuine dispute of material facts as to whether the defendants violated Plaintiff's rights under the State Constitution or Statutes, when viewed in the light most favorable to Plaintiff.

In support Plaintiff relies on his arguments and case law cited in Objections #1-4. Defendants are not entitled to Summary Judgment based on a genuine dispute of material facts.

Pursuant to 28 U.S.C. 1746, I Kushawn Miles-El, swear under the penalty of perjury that all the above foregoing objections are true and correct.

Date: November 11, 2024

Kushawn Miles-El #237011

### Certificate of Service

I, certify that I served a copy of Plaintiff's Objections to the Defendants Motion for Summary Judgment on the Defendants attorney of Record, on November 13, 2024.

Date: November 11, 2024

Kushawn Miles-El #237011

18



Kushawn Miles - El #737011
Lakeland Correctional Facility
141 First street
Coldwater, MI  49036

OFFICE o
United S
399 Fed
116 Mich
Grand Ra



f the Clerk
tates District Court
ral Building
igan street, NW
ds, Mi 49503